UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: S-Tek 1, LLC,                                                                 No. 20-12241-j11

    Debtor.

---

S-Tek 1, LLC

    Plaintiff and Counter-Defendant,

    v.                                                                                              Adv. Proc. No. 20-01074-j

SURV-TEK, INC. *et al.*,

    Defendants and Counterclaimants,

-and-

SURV-TEK, INC. *et al.*,

    Third Party Plaintiffs,

    v.

CHRISTOPHER CASTILLO *et al.,*

    Third Party Defendants.

## MEMORANDUM OPINION REGARDING CLAIMS AGAINST GUARANTORS AND EMERGENCY MOTION FOR JUDGMENT AGAINST GUARANTORS

    THIS MATTER is before the Court on Surv-Tek, Inc.'s ("Surv-Tek") third-party claims against Randy Asselin, Christopher Castillo, and Kymberlee Castillo (collectively, the "Guarantors") in adversary proceeding number 20-01074-j (the "Adversary Proceeding") and Surv-Tek's *Emergency Motion for Entry of Judgment Against Guarantors* (the "Emergency Motion" – Doc. 147).

## FACTUAL AND PROCEDURAL HISTORY

The Court held a trial in the Adversary Proceeding on January 25 through February 7, 2022,[1] and issued a memorandum opinion on June 13, 2022, with extensive findings of fact and conclusions of law (the "Prior Memorandum Opinion" – Doc. 132). The Court incorporates all findings of fact and conclusions of law in the Prior Memorandum Opinion into this memorandum opinion.

In connection with the Prior Memorandum Opinion, the Court entered an order, disposing of a majority of claims in the case (the "Prior Order" – Doc. 133, as corrected by Doc. 135). However, the Court reserved ruling on claims against the Guarantors for breach of the Commercial Guaranty (with respect to the Note) and Personal Guaranty (with respect to the Lease). *See* Doc. 133.

The Court fixed a briefing schedule for the parties to file briefs on the issue of whether the claims of Surv-Tek and STIF, LLC against the Guarantors are determined based on the allowed amounts of their claims in S-Tek 1, LLC's ("S-Tek") bankruptcy case or are determined under applicable state law without regard to any limitations on the amount of the allowed claims in the bankruptcy case. Briefing was completed on August 8, 2022. In their brief, the Guarantors argue that the language of the Commercial Guaranty, which states that the Guarantors guarantee the "Indebtedness of S-Tek 1, LLC," limits the Guarantors' liability to the portion of the Indebtedness (as defined in the Commercial Guaranty) for which S-Tek is responsible. *See* Doc. 138 at ¶¶ 13-16. The Guarantors argue further that since S-Tek's liability on the Indebtedness is limited by

---

[1] The trial was combined with a final hearing on S-Tek's motion to subordinate the claims of Surv-Tek pursuant to 11 U.S.C. § 510(c), Doc. 258 in the bankruptcy case, Case No. 20-12241-j11.

applicable bankruptcy law, the Guarantors' liability under the Guaranties is similarly limited.[2] In their reply brief, the Guarantors make the additional argument that, at a minimum, the limitation of the guaranteed obligation in the Commercial Guaranty to the "Indebtedness of S-Tek 1, LLC" creates ambiguity with respect to the extent of the Guarantors' liability. *See* Doc. 143 at ¶¶ 12-16. The Guarantors ask the Court to admit parol evidence relevant to that issue.

Based on the Guarantors' request to present parol evidence, the Court fixed a deadline of August 29, 2022 for the Guarantors to file an offer of proof regarding what the evidence would show if the Court permitted parol evidence on the alleged ambiguity. *See* Doc. 146. The Guarantors timely filed their offer of proof on August 29, 2022 (the "Offer of Proof" – Doc. 148). The Offer of Proof states,

> 10. In signing the Commercial Guaranty, the Guarantors did not believe or understand that their liability under the Note would ever exceed S-Tek's liability under the Note.
> 11. In signing the Commercial Guaranty, the Guarantors believed that their liability under the Note was wholly dependent on S-Tek's liability and responsibility to pay thereunder.
> 12. If anyone had asked the Guarantors, at the time of signing the Commercial Guaranty, whether, under the Commercial Guaranty, they could ever be responsible for a charge under the Note that S-Tek itself was not responsible for, they all would have answered no.
> 13. Part of the reason for these understandings and beliefs was the Commercial Guaranty's statement that "each . . . Guarantor, absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of S-TEK 1, LLC . . . ." The Guarantors viewed this as a straightforward application of the principle that their liability under the Commercial Guaranty wholly derived from S-Tek's responsibility to pay under the Note.

Offer of Proof at ¶¶ 10-13.

Meanwhile, earlier on August 29, 2022, Surv-Tek filed its Emergency Motion, asking the Court to enter final judgment against the Guarantors with a reservation by Surv-Tek of the right to

---

[2] S-Tek and the Guarantors asked the Court to determine that they have no liability to Surv-Tek based on their defenses and counterclaim. The Court ruled otherwise. Neither S-Tek nor the Guarantors have waived any objections to the Court's findings and conclusions in the Prior Memorandum Opinion.

present evidence at a later date of the amount of attorney's fees and costs to be awarded in the judgment. Surv-Tek alleged that Mr. and Mrs. Castillo had listed their home for sale and raised concerns regarding potential fraudulent transfers. *See* Emergency Motion at ¶¶ 7-10.

The Court held a status conference on the Emergency Motion on August 30, 2022. Counsel and parties who appeared at the status conference were noted on the record. The Court stated that it had reviewed the Offer of Proof and denied the request for parol evidence regarding the extent to the Guarantors' liability under the Commercial Guaranty. The Court further stated that, therefore, a final judgment could be rendered on the claims against the Guarantors without additional evidence, except for evidence needed prior to entry of a final judgment to determine the amount of attorney's fees and costs to be awarded. Based on the Court's statement, Surv-Tek agreed to waive its claim for attorney's fees and costs against the Guarantors.[3] The Court therefore will enter a final judgment on Surv-Tek's claims against the Guarantors as requested in the Emergency Motion.

CONCLUSIONS OF LAW

In determining whether the Guarantors' liability under the Commercial Guaranty is limited to the amount of S-Tek's liability, there are two separate issues at play. First, the Court must determine whether bankruptcy law limits not only the Debtor's (S-Tek's) liability but also the Guarantors' liability. Second, the Court must determine whether the language of the Commercial Guaranty limits the Guarantors' liability. Both of those questions are answered

---

[3] Under Fed. R. Civ. P. 54(d)(2)(A), "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." The Court determined that the attorney's fees provision in the Commercial Guaranty stems from a breach of contract, and therefore attorney's fees is an element of damages. *See Rockland Trust Co. v. Computer Associated Int'l, Inc.*, No. 95-11683-DPW, 2008 WL 3824791, at *5 (D. Mass. Aug. 1, 2008). As such, under Fed. R. Civ. P. 54(d)(2)(A), attorney's fees is an issue for trial, not a post-judgment motion.

dispositively by Tenth Circuit precedent in *FB Acquisition Prop. I, LLC v. Gentry (In re Gentry)*, 807 F.3d 1222 (10th Cir. 2015).

### *(1) The Guarantors' Liability Is Not Limited by Bankruptcy Law*

There are bankruptcy limitations on the amount of an allowed claim of a creditor against the debtor in a bankruptcy case. For example, in a chapter 11 case, a secured creditor is entitled to post-petition, preconfirmation interest and attorney's fees and costs provided for in a contract or under state law, as part of its allowed claim, only to the extent the value of the collateral securing the claim exceeds the amount of the claim. 11 U.S.C. § 506(b). In a bankruptcy case, creditors are paid by a trustee or debtor-in-possession on allowed claims. But limitations on the liability of a debtor on allowed claims in a bankruptcy case do not extinguish or limit the amount of the underlying debt; the Bankruptcy Code only limits the amount of the debt that can be collected as a personal liability of the debtor. A discharge operates as an injunction against any act to collect the debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2); *see also Gentry*, 807 F.3d at 1228 ("A bankruptcy court can grant a discharge, but a discharge does not extinguish the underlying debt[;] rather it changes a debtor's liability for that debt. . . . [T]he indebtedness remains unchanged—and that is what the [guarantors] guaranteed.").[4]

The Tenth Circuit Court of Appeals in *Gentry* explains that a bankruptcy discharge does

---

[4] The principle applied in *Gentry* that "a discharge does not extinguish the underlying debt rather it changes a debtor's liability for that debt" is consistent with other caselaw. *See, e.g., Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S. Ct. 2150, 2154, 115 L. Ed. 2d 66 (1991) ("Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."); *In re Craig*, 325 B.R. 804, 806 (Bankr. N.D. Iowa 2005) ("What is important to keep in mind is that a discharge in bankruptcy does not extinguish the debt itself but merely releases the debtor from personal liability which, by virtue of section 524(a)(2) bars its enforcement against him. The debt still exists, however, and can be collected from any other entity that might be liable."); *In re R. J. Reynolds-Patrick County Mem'l Hosp., Inc.*, 305 B.R. 243, 246 (Bankr. W.D. Va. 2003) ("What, then, is the effect of a discharge if it does not extinguish the debt? A discharge prevents a creditor from collecting the debt as a personal obligation of the debtor.").

not affect a guarantor's liability:

> The Bankruptcy Code provides—and multiple courts have confirmed—that discharge of a borrower's debt in bankruptcy does not affect a guarantor's liability. 11 U.S.C. § 524(e). Expressly stated in the code, that principle preserves creditors' claims against co-debtors and guarantors and provides an avenue for creditors to freely prosecute those claims. Bankruptcy cases consistently and uniformly apply this rule.
>
> Holding otherwise would impair a guaranty. Guaranties act as a safeguard, assuring performance of a guarantor even if the borrower defaults. In fact, fear of a borrower's default often motivates a creditor to require a guarantor. *See* Restatement (Third) of Suretyship & Guaranty § 34 (1996); *see also NCNB Tex. Nat'l Bank v. Johnson,* 11 F.3d 1260, 1266 (5th Cir. 1994) (stating that a creditor 'obtains guaranties specifically to provide an alternative source of repayment' in the event of bankruptcy). Extending this rule of equivalent liability into the bankruptcy context would destroy the value of a guaranty.

*Gentry*, 807 F.3d at 1227 (internal citations omitted). Thus, the Guarantors' liability under the Commercial Guaranty is not limited by bankruptcy principles to the amount of S-Tek's liability for allowed claims in its bankruptcy case.

*(2) The Guarantors' Liability Is Not Limited by the Language of the Guaranty*

In *Gentry*, the Tenth Circuit Court of Appeals also addressed the issue of whether the language in a guaranty, which only guarantees the debt of the borrower, curtails the amount the guarantor owes if the borrower files bankruptcy. That issue is the precise argument raised by the Guarantors in this case. The *Gentry* opinion explains:

> Second, even if we overlooked Ball Four's bankruptcy and relied solely on the language of the guaranties, we still cannot agree with the bankruptcy court's reading of that text. . . . Rather than looking at the guaranties on the whole, the Gentrys ask this court to focus solely on the definition of indebtedness. The Gentrys promised to repay Ball Four's 'indebtedness' when they guaranteed the loan. Indebtedness, they argue, reflects 'judgments ... or transactions that ... modify ... or substitute these debts ... whether [ ] voluntarily or involuntarily incurred.' The Gentrys claim Ball Four's indebtedness now reflects the bankruptcy court's judgment that modified the underlying debt. This argument misunderstands the power of a bankruptcy court. A bankruptcy court can grant a discharge, but a discharge does not extinguish the underlying debt[;] rather it changes a debtor's liability for that debt. This distinction is important. In confirming the Ball Four Plan, the bankruptcy court did not modify Ball Four's indebtedness but its liability for

-6-

Case 20-01074-j    Doc 158    Filed 08/31/22    Entered 08/31/22 12:14:51 Page 6 of 10

that indebtedness. Therefore, the indebtedness remains unchanged—and that is what the Gentrys guaranteed.

*Gentry*, 807 F.3d at 1227-28 (internal citation omitted).

In this case, the Guarantors point to similar language in the Commercial Guaranty, providing that they guaranteed the "Indebtedness of S-Tek 1, LLC." Whether the guarantor guarantees payment of the indebtedness and the definition of indebtedness is the debt of the borrower (like the guaranty in *Gentry*) or the guarantor guarantees the indebtedness of the borrower (like the Commercial Guaranty at issue before this Court), it is a distinction without a difference. Thus, under *Gentry*, the Guarantors' liability under the Commercial Guaranty is not limited by the phrase "Indebtedness of S-Tek 1, LLC" to the amount of S-Tek's liability for allowed claims as a debtor in a bankruptcy case.

(3) *Parol Evidence on the Commercial Guaranty Is Not Admissible*

The Court stated on the record at the status conference held August 30, 2022, that it denied the Guarantors' request to present parol evidence to support their argument that the Commercial Guaranty was ambiguous with respect to the phrase "Indebtedness of S-Tek 1, LLC."

Construction and enforcement of the Commercial Guaranty is governed by New Mexico law. Commercial Guaranty at p. 3. The general rule in New Mexico is that extrinsic evidence is not admissible to modify or contradict the terms of a contract that is unambiguous. *C.R. Anthony Co. v. Loretto Mall Partners*, 1991-NMSC-070, ¶¶ 10 & 12, 112 N.M. 504, 507-08, 817 P.2d 238, 241-42. However, "in determining whether a term or expression to which the parties have agreed is unclear, a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance." *C.R. Anthony*, 1991-NMSC-070, ¶ 15, 112 N.M. at 508-09, 817 P.2d at 242-43. This language

describes the concept of a "latent ambiguity," where the document is not ambiguous on its face, but introduction of extrinsic evidence demonstrates that there was actually an ambiguity.

This Court has previously explained the concept of latent ambiguity and the admissibility of parol evidence in connection with a latent ambiguity as follows:

> Further, many courts recognize the doctrine of latent ambiguity in connection with application of the parol evidence rule. " 'An ambiguity is latent when the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings.' " *Moore v. Pennsylvania Castle Energy Corp.,* 89 F.3d 791, 796 (11th Cir.1996) (citation to quoted case omitted). The classic example of a latent ambiguity is when a contract refers to an object by a particular name, but more than one object has the same name. A latent ambiguity may also exist when language used in a contract has a specialized meaning in a trade.
>
> This Court agrees that parol evidence is admissible to determine whether a latent ambiguity exists, but only if the party seeking to admit the evidence can provide a plausible alternative meaning for the language in question. If parol evidence reveals that a latent ambiguity exists, parol evidence may also be admitted to explain or clarify the meaning of the language revealed to be ambiguous. However, parol evidence is not admissible to contradict the writing or to ascertain what the parties intended to be written independently of interpreting the meaning of the language actually used. In other words, parol evidence is appropriately admitted " 'to declare the meaning of what is written in the instrument, not of what was intended to be written.' "

*In re Platinum Oil Props., LLC*, 465 B.R. 621, 647-49 (Bankr. D.N.M. 2011) (footnote call numbers omitted).

The phrase in the Commercial Guaranty "Indebtedness of S-Tek 1, LLC" is unambiguous on its face even in the context of this bankruptcy case because any bankruptcy-related limitations on S-Tek's liability for the Indebtedness do not affect the amount of the Indebtedness that is guaranteed. Further, the Offer of Proof submitted by the Guarantors does not demonstrate a latent ambiguity. While the Guarantors may have had a secret intention regarding the phrase, such secret intention does not clarify the language. Evidence of a secret intention is different from evidence of the circumstances surrounding the making of the contract and of any relevant

usage of trade, course of dealing, and course of performance.[5] Thus, the Court will not admit parol evidence to clarify an ambiguity in the Commercial Guaranty.

(4) *Guarantors' Liability under the Commercial Guaranty*

In light of the above, and the findings of fact and conclusions of law incorporated from the Prior Memorandum Opinion, the Guarantors are liable under the Commercial Guaranty in the amount awarded against S-Tek, $1,553,454.77, plus post-petition interest at the per diem rate of $203.48 (even though S-Tek will not be liable for post-petition interest if it is granted a discharge).

The Court will enter a separate judgment after it decides the Guarantor's motion for temporary restraining order seeking to enjoin enforcement of the judgment (Doc. 149).

/s/ Robert H. Jacobvitz
_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: August 31, 2022

---

[5] The Court notes that one New Mexico Court of Appeals case stated that *C.R. Anthony* overturned a prior decision holding that secret, unexpressed intentions of a party are not admissible to interpret the meaning of a restrictive covenant. *Agua Fria Save The Open Space Ass'n v. Rowe*, 2011-NMCA-054, ¶ 22, 149 N.M. 812, 818, 255 P.3d 390, 396 (explaining that *Wilcox v. Timberon Protective Ass'n,* 1990-NMCA-137, 111 N.M. 478, 806 P.2d 1068 was overturned by *C.R. Anthony*, 1991-NMSC-070, 112 N.M. 504, 817 P.2d 238). The court in *Agua Fria* went on to say that it would therefore not follow *Wilcox*. While this Court agrees that parol evidence is admissible to show a latent ambiguity, evidence of a secret intent alone is insufficient to demonstrate a latent ambiguity. *C.R. Anthony* does not hold otherwise. "Mutual assent is based on objective evidence, not the private, undisclosed thoughts of the parties. In other words, what is operative is the objective manifestations of mutual assent by the parties, not their secret intentions." *Pope v. Gap, Inc.*, 1998-NMCA-103, ¶ 13, 125 N.M. 376, 380, 961 P.2d 1283, 1287 (internal citations omitted).

COPY TO:

<u>Counsel for the Guarantors</u>
Nephi Hardman
Nephi D. Hardman Attorney at Law, LLC
9400 Holly Ave NE Bldg 4
Albuquerque, NM 87122

<u>Counsel for Surv-Tek, Inc.</u>
Christopher M. Gatton
Giddens & Gatton Law, P.C.
10400 Academy NE, Suite 350
Albuquerque, NM 87111