UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:   S-Tek 1, LLC,                                                    No. 20-12241-j7
a New Mexico Limited Liability Company,

      Debtor.

S-Tek 1, LLC,
a New Mexico limited liability company,

      Plaintiff and Counter-Defendant,

      v.                                                    Adversary No. 20-1074-j

SURV-TEK, INC., et al.,

      Defendants and Counter-Plaintiffs.

## **MEMORANDUM OPINION**

Before the Court is a Motion for Declaratory Judgment filed February 16, 2023[1] in which

Randy Asselin joined on March 23, 2023.[2] The S-Tek 1, LLC ("S-Tek") chapter 11 case

converted to a case under chapter 7 on March 29, 2023.[3] The chapter 7 trustee has not joined in

the Motion for Declaratory Judgment. By the Motion for Declaratory Judgment, Randy Asselin

asks the Court to determine the rights and obligations of the parties under a Non-Compete

Agreement executed in connection with the sale of Surv-Tek, Inc.'s surveying business to S-Tek.

The Non-Compete Agreement is between Surv-Tek, Inc. ("Surv-Tek") and its principals, Russ

---

[1]  *See* Motion for Declaratory Judgment that Mirroring Clause in Non-Compete Agreement is of
No Force and Effect ("Motion for Declaratory  Judgment" – Doc. 180).
[2] *See* Doc. 187.
[3] *See* Bankruptcy Case No. 20-12241-j7 – Docs. 548 and 560.

Hugg and Robbie Hugg (the "Surv-Tek Parties"), on one side, and S-Tek, Kymberlee Castillo,[4] and S-Tek's principals Randy Asselin and Christopher Castillo (the "S-Tek Parties"), on the other.

The Non-Compete Agreement requires S-Tek and the S-Tek Parties not to compete with Surv-Tek and the Surv-Tek Parties in the land surveying business within the state of New Mexico for a period of three years following a default by S-Tek or the S-Tek Parties under any of the closing documents executed in connection with the sale of the business. At issue is whether the three-year noncompete period has expired. Mr. Asselin contends that the three-year noncompete period under the Non-Compete Agreement has expired by its own terms and under applicable law. Surv-Tek and the Surv-Tek Parties contend that the three-year noncompete period has been suspended, either by operation 11 U.S.C. § 108(c),[5] or under the doctrine of equitable tolling. Alternatively, Surv-Tek and the Surv-Tek Parties assert that the Court has the authority to and should reform the terms of the Non-Compete Agreement to extend the three-year noncompete period.

Having considered the parties' briefs and applicable case law, the Court concludes for the reasons set forth below that § 108(c) is inapplicable and that the Court does not have the authority to reform the Non-Compete Agreement to extend the three-year noncompete period. However, the Court concludes further that the three-year noncompete period may have been tolled under the doctrine of equitable tolling, but it is necessary for the Court to hear evidence to determine whether equitable tolling should be applied. For that reason, the Court will schedule

---

[4] Although Kymberlee Castillo is identified as a party in the recitals of the Non-Compete Agreement, she did not sign the Non-Compete Agreement; her signature block is blank. *See* Motion for Declaratory Judgment – Exhibit A.
[5] Unless otherwise specified, references to "section__" or "§__" are to title 11 of the United States Code

-2-

an evidentiary hearing limited to that issue. In this opinion the Court will explain what evidence will be relevant at the evidentiary hearing.

BACKGROUND, FACTS, AND PROCEDURAL HISTORY[6]

In 2019, S-Tek purchased Surv-Tek's surveying business. In connection with the sale of the business, S-Tek signed a promissory note in favor of Surv-Tek in the principal amount of $1,550,000.00 (the "Note").[7] S-Tek, the S-Tek Parties, Surv-Tek and the Surv-Tek Parties also entered into a Non-Compete Agreement dated January 1, 2019.[8] The noncompete obligations arose as a part of a negotiated commercial transaction between sophisticated parties represented by counsel in connection with the sale of Surv-Tek's business to S-Tek. The Non-Compete Agreement defines Surv-Tek as the "Seller," Russ P. Hugg and Robbie T. Hugg as the "Seller Parties," S-Tek as the "Buyer," and Christopher B Castillo, Kymberlee A. Castillo, and Randy Asselin as the "Buyer Parties."[9] In recognition that "the Buyer would be irreparably injured . . . if the Seller and Seller Parties were allowed to compete with the Buyer," the Non-Compete

---

[6] The facts contained in the Background, Facts, and Procedural History section of this Memorandum Opinion are based on the following: 1) the Court's findings of fact contained in its Memorandum Opinion (Doc. 132) entered following the 9-day trial in this adversary proceeding, which have preclusive effect; 2) documents attached as exhibits to the parties' briefs; 3) documents filed of record in this adversary proceeding; and 4) the docket and the documents filed of record in S-Tek's related bankruptcy case, Case No. 20-12241-j11. The findings of fact in the Court's prior Memorandum Opinion have preclusive effect with respect to the Motion for Declaratory Judgment because the judgment the Court entered based on such findings of fact is final as to Surv-Tek, the Surv-Tek Parties, S-Tek, and the S-Tek Parties. The Court also takes judicial notice of documents filed of record in this adversary proceeding and in S-Tek's related bankruptcy case. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (10th Cir. 1979) ("[A] court may take judicial notice, whether requested or not . . . of its own records and files . . . . particularly . . . the court's own records of prior litigation closely related to the case before it.") (citations omitted), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001). Finally, the Court assumes for purposes of this Memorandum Opinion that the documents attached to the parties' briefs are not in dispute and would be admissible at an evidentiary hearing.
[7] *See* Memorandum Opinion – Doc. 132, p. 32.
[8] *See* Motion for Declaratory Judgment – Doc. 180, Exhibit A.
[9] *Id.*

Agreement required the Seller and the Seller Parties not to compete or interfere with the business of the Buyer in the State of New Mexico for five years following Surv-Tek's sale of the business to S-Tek.[10] The noncompete obligation applied to competing directly and competing indirectly through ownership of an entity or by acting as an agent, advisor, or consultant for an entity.[11]

Paragraph 1 provides further that,

> The Seller and Seller Parties further acknowledge and agree that Buyer's remedy at law for any breach of any obligations under this Non-Compete Agreement would be inadequate, and agree and consent that temporary and permanent injunctive relief maybe granted in any proceeding which may be brought to enforce any provision of this Non-Compete Agreement without the necessity of proof of actual damage to Buyer.

Paragraph 1 of the Non-Compete Agreement, which sets out the parameters of the noncompete restrictions, provides, in part:

> If any restriction[ ] contained in this Non-Compete Agreement is too broad to permit enforcement of such restriction to its full extent, then such restriction will be enforced to the maximum extent permitted by law and the Seller and the Seller Parties, Buyer and Buyer[ ] Parties hereby consent and agree that this Agreement may be judicially modified accordingly in any proceeding brought to enforce such restriction.[12]

(the "Savings Clause").

The Non-Compete Agreement imposes reciprocal noncompete restrictions on the Buyer and Buyer Parties. Paragraph 3 of the Non-Compete Agreement provides, in relevant part:

> The covenants and agreements contained in Paragraphs 1 and 2 above shall terminate automatically with respect to Seller and Seller Parties if Buyer or Guarantor(s), as applicable, commits a "Default" or an "Event of Default" as said term is defined in any of the following agreements,[13] and such Default or Event of Default remains uncured for a period of 10 days following the date notice of

---

[10] *See* Non-Compete Agreement, Recitals, and ¶¶ 1 and 2.

[11] Non-Compete Agreement, ¶ 1.

[12] Non-Compete Agreement, ¶ 1.

[13] The Non-Compete Agreement lists the agreements as the Note, a Security Agreement executed at closing, and the S-Tek Parties' personal guaranties of the Note. Non-Compete Agreement, ¶ 3(A), (B), and (C).

-4-

default under the applicable agreement is given by Seller. Upon such termination the covenants and agreements contained in Paragraphs 1 and 2 above shall no longer bind the Seller or Seller Parties, and the Buyer and Buyer Parties agree not to compete for a period of 3 years from the date of the Default or Event of Default giving rise to the termination of the covenants and agreements contained in Paragraphs 1 and 2 binding Seller and Seller Parties.

The Non-Compete Agreement provides further with respect to the reciprocal noncompete restrictions on the Buyer and Buyer Parties,

that the Buyer and the Buyer Parties shall each be bound by the terms stated in Paragraphs 1 and 2 above for a period of three (3) years from date of such "Default" or "Event of Default," agreeing (F) to not compete against the Seller on the same terms and provisions should Seller elect to conduct business in New Mexico as a residential and/or commercial survey company, and (G) to not seek to solicit the clients of Seller, nor Seller's employees, for the same three (3)  year period, it being the intent of the parties to this Agreement to give Seller the same benefits given Buyer under Paragraphs 2 and 3 above for a term of not less than three (3) years from the date of the triggering "Default" or "Event of Default" so that Seller and/or Seller Parties are able to reestablish Seller's Business in New Mexico.[14]

The noncompete obligations of the Buyer and the Buyer Parties under the Non-Compete Agreement hereafter are called "S-Tek and the S-Tek Parties' Non-Compete Obligations."[15]

Thus, under the Non-Compete Agreement, if S-Tek did not cure a default within 10 days after notice of default, Surv-Tek and the Surv-Tek Parties' noncompete obligations under the Non-Compete Agreement would terminate, and S-Tek and the S-Tek Parties' Non-Compete Obligations would become effective: *i.e.*, Surv-Tek and the Surv-Tek Parties could resume

---

[14] Non-Compete Agreement, p. 3.
[15] The definitions of "Buyer" and "Buyer Parties" under the Non-Compete Agreement are the same as the definitions of "S-Tek" and "S-Tek Parties," respectively, in this Memorandum Opinion. The definitions of "Seller" and "Seller Parties" under the Non-Compete Agreement are the same as the definitions of "Surv-Tek" and "Surv-Tek Parties," respectively, in this Memorandum Opinion The Court uses the terns "S-Tek" and "Buyer," the terms "S-Tek Parties" and "Buyer Parties," the terms "Seller" and "Surv-Tek," and the terms "Seller Parties" and "Surv-Tek Parties," interchangeably.

surveying business operations, and S-Tek and the S-Tek Parties could not compete with Surv-Tek in the survey industry in New Mexico for a period of 3 years after the default.[16]

By a letter dated May 7, 2019 (the "May 2019 Default Notice"), Surv-Tek, through its counsel, notified S-Tek and the S-Tek Parties that a) they were in default by failing to make the payment to Surv-Tek due May 1, 2019 under the Note, b) S-Tek and the S-Tek parties' counsel were given notice of the default by email dated May 3, 2019, and c) no payment had been received from S-Tek as of May 7, 2019.[17] The May 2019 Default Notice provided further that if the balance due under the Note was not paid in full by May 20, 2019, Surv-Tek and the Surv-Tek Parties no longer would be bound by the terms of the Non-Compete Agreement, and S-Tek and the S-Tek Parties would be bound by S-Tek and the S-Tek Parties' Non-Compete Obligations.[18] As this Court previously found , Surv-Tek accepted S-Tek's late payment following the May 2019 Default Notice, waived any payment default, and took no further enforcement action based on the late payment.[19]

On July 9, 2019, S-Tek filed a complaint against Surv-Tek in the Second Judicial District Court for the State of New Mexico as Case No. D-202-CV-2019-05359, captioned *S-Tek 1, LLC v. Surv-Tek Inc.* (the "State Court Action").[20]

On October 2, 2019, Surv-Tek, through its counsel, sent another default letter to S-Tek and the S-Tek Parties (the "October 2019 Default Notice"), notifying S-Tek and the S-Tek Parties that they were in default in paying the Note.[21] The October 2019 Default Notice provided

---

[16] Non-Compete Agreement, ¶ 3.
[17] *See* Motion for Declaratory Judgment – Doc. 180, Exhibit B.
[18] *Id.*
[19] Memorandum Opinion – Doc. 132, pp. 87 and 103.
[20] *See* Doc. 13-2. Russ Hugg, Robbie Hugg, STIF, LLC, and Dennis Smigiel (the business sales broker) were later added as defendants in the State Court Action. *See* Doc. 13-15.
[21] *See* Motion for Declaratory Judgment – Doc. 180, Exhibit C.

-6-

further that if the amounts necessary to cure the default under the Note were not received by 5:00 p.m. on October 8, 2019, Surv-Tek and the Surv-Tek Parties "will consider" exercising their remedies under the Note and related closing documents, including "[r]elief from the Non-Compete Agreement, with Messiers Asselin and Castillo being bound not to compete" under S-Tek and the S-Tek Parties' Non-Compete Obligations.[22]

The Court found in its Memorandum Opinion that S-Tek defaulted under the Note and did not cure the default within 10 days after notice of default was given on March 23, 2020 (or thereafter).[23] S-Tek, Randy Asselin, and Christopher Castillo continued to operate S-Tek after expiration of the 10-day cure period on April 2, 2020.[24]

On May 5, 2020, Surv-Tek and the Surv-Tek Parties asserted counterclaims against S-Tek and the S-Tek Parties in the State Court Action, including a claim for damages for breach of S-Tek and the S-Tek Parties' Non-Compete Obligations.[25] On August 26, 2020, Surv-Tek filed a motion in the State Court Action to enjoin S-Tek and the S-Tek Parties from engaging in the surveying business pursuant to the terms of the Non-Compete Agreement. ("Motion to Enjoin Competition").[26] On October 13, 2020, the state court held a hearing on the Motion to Enjoin Competition, which resulted in an order entered October 21, 2020 (the "State Court Order") ordering S-Tek, Mr. Asselin, and Mr. Castillo "to cease and desist" from engaging in any competition with Surv-Tek if S-Tek did not come current on all indebtedness due under the Note by 5:00 p.m. on November 2, 2020.[27] The effect of the State Court Order was to relieve Surv-Tek of its obligations under the Non-Compete Agreement and permitted Surv-Tek to engage in

---

[22] *Id.*
[23] *See* Memorandum Opinion – Doc. 132, pp. 35, 115 and 116.
[24] *Id.*
[25] *See* Docs. 12-24 and 31-1.
[26] *See* Doc. 13-94.
[27] *See* Doc. 13-127.

the surveying business in New Mexico if S-Tek did not come current on all indebtedness due under the Note by 5:00 p.m. on November 2, 2020.[28] S-Tek did not become current on the Note by that date. On November 12, 2020, the state court entered a show cause order requiring S-Tek, Mr. Asselin, and Mr. Castillo to appear at a hearing on December 3, 2020 to show cause why they should not be held in contempt for violating prior orders, including the State Court Order.[29] At least by January 11, 2020, Surv-Tek resumed engaging in the survey business in New Mexico.[30]

The day before the scheduled show cause hearing in the State Court Action, S-Tek filed a voluntary petition under chapter 11 of the Bankruptcy Code on December 2, 2020, electing treatment under subchapter V,[31] and removed the State Court Action to this Court, initiating this adversary proceeding.[32] The effect of filing the bankruptcy petition was to say enforcement of the State Court Order and S-Tek and the S-Tek Parties' Non-Compete Obligations.[33] This Court entered an order that stayed the State Court Order with respect to S-Tek and with respect to Mr. Asselin and Mr. Castillo to the extent they compete with Surv-Tek solely through their operation of S-Tek.[34] By staying enforcement of the State Court Order as it related to competition by S-Tek, Randy Asselin, and Christopher Castillo, this Court provided S-Tek with an opportunity to formulate and confirm a chapter 11 plan.[35]

Following a nine-day trial of this adversary proceeding, this Court denied Surv-Tek's counterclaim for breach of the Non-Compete Agreement, with prejudice, with respect to

---

[28] *Id.*
[29] *See* Memorandum Opinion – Doc. 132, p. 64.
[30] *See* Doc. 17.
[31] *See* Case No. 20-12241-j11 – Doc. 1.
[32] *See* Doc. 1.
[33] *See* Doc. 17.
[34] *Id.*
[35] *Id.*

damages because Surv-Tek and the Surv-Tek Parties did not present any evidence at trial establishing the amount of damages caused by S-Tek's breach of the Non-Compete Agreement.[36] However, the Court denied Surv-Tek and the Surv-Tek Parties' claim for breach of the Non-Compete Agreement without prejudice with respect to a claim for injunctive relief, provided such a claim is not barred by the automatic stay or a discharge injunction.[37] Finally, the Court found that although S-Tek and the S-Tek Parties' Non-Compete Obligations are binding on S-Tek and the S-Tek Parties for the remainder of the 3-year term, the automatic stay prevented Surv-Tek and the Surv-Tek Parties from enforcing those obligations such that Surv-Tek was not entitled to a permanent injunction preventing S-Tek from violating its obligations under the Non-Compete Agreement unless and until Surv-Tek obtained relief from the automatic stay.[38] With respect to enforcement, the Non-Compete Agreement provides that injunctive relief may be obtained "without the necessity of proof of actual damage[.]"[39]

S-Tek was not able to confirm a plan. On March 15, 2023, the Court entered an order converting S-Tek's chapter 11 case to chapter 7, effective 14 days after the date of entry of that order.[40]

S-Tek filed its Motion for Declaratory Judgment on February 16, 2023.[41] The Court entered an order fixing a deadline for Surv-Tek to file a response and for S-Tek to file an optional reply.[42] At a status conference held in S-Tek's bankruptcy case on March 22, 2023, the Court indicated that, unless the chapter 7 trustee intended to operate S-Tek's business (which the

---

[36] Memorandum Opinion – Doc. 132, p. 116.
[37] *Id.*
[38] *Id.* at p. 120.
[39] Non-Compete Agreement, ¶ 1.
[40] *See* Case No. 20-12241-j11 – Doc. 548.
[41] Doc. 180.
[42] Doc. 182.

Court viewed as highly unlikely), it seemed unnecessary for the Court to decide the Motion for Declaratory Judgment, since neither of S-Tek's principals had joined in the Motion for Declaratory Judgment.[43]

The Court entered an order fixing a deadline of March 27, 2023 for Randy Asselin and/or Christopher Castillo to join in the Motion for Declaratory Judgment and a deadline of March 28, 2023 for Surv-Tek to file its own motion in the event neither Mr. Asselin nor Mr. Castillo joined in the Motion for Declaratory Judgment and Surv-Tek wished the Court to determine whether S-Tek and the S-Tek Parties' Non-Compete Obligations had expired or were tolled during the bankruptcy case.[44] Randy Asselin timely filed a joinder in the Motion for Declaratory Judgment.[45] The Court ordered further that it would make a ruling based on the existing briefs filed by S-Tek and S-Tek and the Surv-Tek Parties if Mr. Asselin and/or Mr. Castillo joined in the Motion for Declaratory Judgment, but that, if the Court determined that an evidentiary hearing is necessary, it would set an evidentiary hearing on short notice.[46]

DISCUSSION

Mr. Asselin (through his joinder in the Motion for Declaratory Judgment) contends that the three-year noncompete period under S-Tek and the S-Tek Parties' Non-Compete Obligations commenced no later than October 12, 2019, ten days following the October 2019 Default Notice, such that the entire noncompete period ended no later than October 12, 2022. Consequently, because the three-year enforcement period has now expired, Mr. Asselin requests the Court to enter a declaratory judgment determining that the Non-Compete Agreement is of no force and effect. Surv-Tek counters that S-Tek and the S-Tek Parties' three-year noncompete period was

---

[43] *See* Doc. 186.
[44] *Id.*
[45] *See* Doc. 187.
[46] *See* Doc. 186.

-10-

suspended by operation of § 108(c) or that the doctrine of equitable tolling applies to extend S-Tek and the S-Tek Parties' Non-Compete Obligations. Alternatively, Surv-Tek asserts that the Court may rely on the Savings Clause in the Non-Compete Agreement to craft an equitable continuation of S-Tek and the S-Tek Parties' Non-Compete Obligations in order to give effect to Surv-Tek's benefit of the bargain under the Non-Compete Agreement. Surv-Tek urges the Court to extend the noncompete period for at least three years after September 19, 2022, the date the Court entered its final judgment against Mr. Asselin and Mr. Castillo in this adversary proceeding, or, more appropriately, three years from the entry of an order by this Court permitting enforcement of S-Tek and the S-Tek Parties' Non-Compete Obligations.

The Non-Compete Agreement is governed by New Mexico law. As a preliminary matter, the Court observes that contractual noncompete provisions that impose "reasonable limits of time and space" are enforceable under New Mexico law, particularly when they are "ancillary to a sale of a business." *Bowen v. Carlsbad Ins. & Real Est., Inc.*, 1986-NMSC-060, ¶ 4, 104 N.M. 514, 516, 724 P.2d 223, 225.[47] *See also Insure New Mexico, LLC v. McGonigle*, 2000-NMCA-018, ¶ 24, 128 N.M. 611, 617, 995 P.2d 1053, 1059 ("Non-competition covenants are ordinarily enforceable as long as a court deems them reasonable."). None of the parties complain that the scope or duration of the restrictions under the Non-Compete Agreement are unreasonable.

A. *Does § 108(c) toll the noncompete period?*

Surv-Tek contends that § 108(c) operated to suspend and extend the three-year noncompete period. The Court disagrees. Section 108(c) extends the period to commence or

---

[47] To determine whether a restrictive covenant not to compete is reasonable, "courts consider such factors as the nature of the business, its location, the parties involved, the purchase price, and the main object of the restriction." *Id.*

-11-

continue an action against a debtor where the applicable period has not expired as of the date of the filing of the bankruptcy petition. It provides, in relevant part:

> [I]f [under] applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
>
> > (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> >
> > (2) 30 days after notice of the termination or expiration of the stay under section 362 . . . of this title . . . with respect to such claim.

§ 108(c).

"Generally, section 108(c) gives any party who was stayed from commencing or continuing a legal proceeding because of a bankruptcy filing . . . at least 30 days after notice that the stay has ended to take such action." 2 Collier on Bankruptcy ¶ 108.01 (Richard Levin & Henry J. Sommer eds., 16th ed.). However, § 108(c) does not itself independently toll an applicable statute of limitations. *See Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067, 1073 (2d Cir. 1993) ("[B]y its terms § 108(c) does not provide for tolling of any externally imposed time bars . . . . [It] only calls for applicable time deadlines to be extended for 30 days after notice of termination of a bankruptcy stay, if any such deadline would have fallen on an earlier date."); *Mitchell v. Bigelow (In re Bigelow)*, Adv. No. 07-09159, 2008 WL 191816, at *2 (Bankr. N.D. Iowa Jan. 22, 2008) ("Section 108 does not operate to independently toll a statute of limitations."), *aff'd,* 393 B.R. 667 (8th Cir. BAP 2008). Thus, if a statute of limitations would expire during the period in which the automatic stay applies, § 108(c) will operate to allow a creditor to commence or continue an action against the debtor within the 30-day grace period following termination of the automatic stay because "the creditor is hampered [by the automatic

-12-

stay] from proceeding outside the bankruptcy court." *In re Richards*, 141 B.R. 751, 751-52

(W.D. Okla. 1992), *aff'd*, 994 F.2d 763 (10th Cir. 1993); *Rogers v. Corrosion Prods., Inc.*, 42

F.3d 292, 297 (5th Cir. 1995) ("Section 108(c) extends the period in which a party must file suit

in order to preserve the claim for whatever period the stay is in force plus thirty days."). A

"continuation" within the meaning of § 108(c) will exist, for example, when a creditor seeks to

enforce an existing judgment by executing on a lien. *In re Swintek*, 906 F.3d 1100, 1106 (9th Cir.

2018) ("[T]he period in which a creditor may enforce a judgment by executing on a lien

constitutes the continuation of the original action that resulted in the judgment.").

Section 108(c) does not apply, however, to extend a period contained within the parties'

agreement that is otherwise unrelated to a deadline to commence or continue a civil action to

enforce a party's rights. *See Hazen First State Bank v. Speight*, 888 F.2d 574, 575 (8th Cir. 1989)

("[S]ection 108(c) has no application to an agreement fixing the time to maintain the Bank's lien

priority pursuant to an agreement between the Bank and the" other secured creditor, since the

deadline in the parties' agreement did not cause the Bank to lose its right to enforce its lien but

merely resulted in a loss of priority status). Section 108(c), therefore, does not suspend or extend

the noncompete period under the Non-Compete Agreement. Thus, while Surv-Tek and the Surv-

Tek Parties could rely on § 108(c) if an applicable limitations period otherwise would have

prevented them from commencing or continuing an action to enforce S-Tek and the S-Tek

Parties' Non-Compete Obligations but for the intervening bankruptcy case, they cannot rely on

§ 108 to toll or extend the noncompete period itself.[48] Surv-Tek and the Surv-Tek Parties

---

[48] Surv-Tek and the Surv-Tek Parties do not need to rely on § 108(c) to suspend an applicable
statute of limitations. They timely asserted their claim against S-Tek and the S-Tek Parties for
breach of the Non-Compete Agreement within the limitations period without any suspension
under § 108(c).

-13-

reliance on § 108 is misplaced. Section 108(c) simply does not apply to toll the noncompete period itself.

B. *The Savings Clause in the Non-Compete Agreement does not permit the Court to extend the three-year noncompete period*

Surv-Tek also contends that the Court can extend the three-year noncompete period by modifying the Non-Compete Agreement under the Savings Clause. That contention is without merit. The Savings Clause in the Non-Compete Agreement permits the Court to adjust any restriction if it is "too broad to permit enforcement of such restriction to its full extent."[49] When an agreement includes a provision allowing such an adjustment, a court may reform the agreement so that it remains enforceable. *See, e.g., KidsKare, P.C. v. Mann*, 2015-NMCA-064, ¶ 12, 350 P.3d 1228, 1232 (finding that the agreement, which provided for court amendment of any provision found overbroad or otherwise unenforceable was subject to reformation by the court). However, the Court's discretion to "judicially modify]"[50] a restriction under the plain language of the Non-Compete Agreement is limited to situations where the Court curtails the scope or duration of a noncompete restriction because the restriction otherwise is too broad to be enforceable. Surv-Tek and the Surv-Tek Parties would have the Court rely on the Savings Clause to *extend* the three-year restriction period. Extending or expanding restrictions is not what the Savings Clause was designed to address. It is therefore not appropriate for the Court to extend or toll the noncompete period under the equitable Savings Clause.

C. *Does equitable tolling apply?*

The Court will start by addressing Randy Asselin's argument that the preclusive effect of the Court's judgment entered in this adversary proceeding against Surv-Tek and the Surv-Tek

---

[49] Non-Compete Agreement, ¶ 1.
[50] *Id.*

Parties on their claim to enforce the Non-Compete Agreement precludes S-Tek and the S-Tek Parties from invoking equitable tolling to extend the noncompete period. Mr. Asselin argues that Surv-Tek and the Surv-Tek Parties are precluded from invoking equitable tolling because Surv-Tek and the Surv-Tek Parties asserted a claim for breach of the Non-Compete Agreement in this adversary proceeding but failed to prove any damages. However, as the Court previously determined in its Memorandum Opinion, Surv-Tek's failure to prove damages at trial does not preclude it from seeking to enforce its rights under the Non-Compete Agreement.[51] The automatic bankruptcy stay prevented Surv-Tek from enforcing S-Tek and the S-Tek Parties' Non-Compete Obligations.

Next, the Court will address whether the noncompete period has been equitably tolled. There is no caselaw in New Mexico regarding whether equitable tolling may extend a noncompete period in a noncompete agreement. Equitable tolling typically is applied in New Mexico to toll the period of a statute of limitations when circumstances beyond the plaintiff's control precluded filing suit within the limitations period. *E.g.*, *Snow v. Warren Power & Mach., Inc.*, 2015-NMSC-026, ¶ 24, 354 P.3d 1285, 1290; *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 15, 135 N.M. 539, 547, 91 P.3d 58, 66; *Olsen v. Bd. of Regents of New Mexico State Univ.,* No. A-1-CA-36598, 2019 WL 6728722, at *4 (N.M. Ct. App. Nov. 14, 2019). Other courts apply equitable tolling to a noncompete period in a noncompete agreement. This Court sees no good reason to limit equitable tolling to statutes of limitation and will apply the doctrine to the Non-Compete Agreement at issue, guided by caselaw in other jurisdictions.

Courts enforce tolling provisions contained within a noncompete agreement. *E.g.*, *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1229 (11th Cir. 2009) (tolling provision

---

[51] Memorandum Opinion – Doc. 132, p. 116.

provided that the six-month restriction period would be tolled during the violation period); *Total Quality Logistics, LLC v. OTC Logistics LLC*, No. 1:19-cv-151, 2019 WL 1300223, at *2 (S.D. Ohio March 21, 2019) (providing for the tolling of one-year restrictive covenant for period party was in violation of the agreement); *Shepard & Assocs. v. Lokring Tech., LLC*, No. 1:20-CV-02488-PAB, 2022 WL 312711, at *34 (N.D. Ohio Feb. 2, 2022).[52] But the lack of a tolling provision in a noncompete agreement does not prevent a court from applying equitable tolling in appropriate circumstances to extend a noncompete period beyond the time fixed in the parties' agreement. *See, e.g., United HealthCare Servs., Inc. v. Corzine*, No. 2:21-CV-319, 2021 WL 961217, at * 18 (S.D. Ohio Mar. 15, 2021) (extending restriction period in noncompete agreement for the period in which the party continued to violate the noncompete provision despite the absence of a tolling provision in the parties' noncompete covenants). "A . . . court may exercise its equitable power to craft an injunction that extends beyond the expiration of the covenant not to compete." *Sutherland Glob. Servs., Inc. v. Sengupta*, No. A-21-CV-401-LY, 2021 WL 7184746, at *12 (W.D. Tex. Oct. 7, 2021), *report and recommendation adopted*, No. 1:21: CV-401-LY, 2022 WL 566191 (W.D. Tex. Jan. 19, 2022); *see also Shepard,* 2022 WL 312711, at *40 (equitable tolling may apply even where the non-competition period had already expired under the parties' agreement).

     Equitable tolling, as the name suggests, is an equitable doctrine. Equitable tolling is predicated on the notion that, in general, it would be inequitable for a party to be stripped of the benefit of its bargain under a noncompete agreement where the breaching party was in

---

[52] In construing a tolling provision contained in a non-compete agreement, courts may determine that the tolling provision is itself unenforceable if it operates to impose an indefinite restriction period. *See Aire Serv LLC v. Roberts (In re Roberts)*, 607 B.R. 635, 651 (Bankr. N.D. Ill. 2019) (explaining that, under Texas law, "tolling language in a covenant not to compete is unreasonable and unenforceable where such language effectively renders such covenant's term indefinitely extendable.").

continuous violation of its noncompete obligation in the face of the other party's diligent attempt to enforce its rights or where the breaching party's conduct otherwise prevented enforcement.

To apply equitable tolling, courts generally require that 1) violation of the noncompete restriction have been continuous and persistent;[53] and 2) the party asking for equitable tolling acted diligently to enforce its rights under the noncompete agreement or was prevented from doing so.[54] Courts also balance the equities, taking into account, for example, whether the breaching party engaged in inequitable conduct such as concealing noncompete violations or otherwise acting egregiously.[55] The balance of equities may favor equitable tolling more where the noncompete requirement arises in connection with the sale of a business than where a noncompete restriction prevents a rank and file employee from earning a livelihood by working for a competitor.[56]

Both prerequisites for application of equitable tolling will have been satisfied if Surv-Tek resumed its survey operations after April 2, 2020 and has continued to engage in the survey

---

[53] *Travelhost, Inc. v. Modglin*, No. 3:11-cv-0456-G, 2012 WL 2049321, at *6 (N.D. Tex. June 6, 2012).

[54] *See Sutherland,* 2021 WL 7184746, at *12 (declining to extend the non-compete period for the entire length of the violation period where the opposing party failed to expeditiously pursue injunctive relief to enforce the agreement); *Weber Aircraft, L.L.C. v. Krishnamurthy*, No. 4:12-Cv-666, 2014 WL 12521297, at *10 (E.D. Tex. Jan. 27, 2024), *report and recommendation adopted sub nom. Weber Aircraft, LLC v. Krishnamurthy*, No. 4:12-CV-666, 2014 WL 12918853 (E.D. Tex. July 29, 2024) (equitable tolling allowed only in situations where the plaintiff moved for injunctive relief to enforce the non-compete provision prior to the expiration of the restrictive covenant).

[55] *See Sutherland*, 2021 WL 7184746, at *12 (equitable tolling applied where there was evidence of "flagrant violations" and "concentrated efforts to conceal those violations"); *Weber Aircraft*, 2014 WL 2521297, at *10 (equitable tolling is proper where plaintiff timely seeks injunctive relief to enforce a noncompete provision and defendant engages in egregious stall tactics that delay the litigation).

[56] *See FrontRunner HC, Inc. v. Waveland, RCM, LLC*, No. CV 20-10230-DJC, 2020 WL 7321161, at *6 (D. Mass. Dec. 11, 2020) (acknowledging that equitable tolling may be appropriate under non-traditional non-compete provisions, such as in connection with the sale of a business rather than as part of an employment contract).

business in New Mexico. In that event, S-Tek and the S-Tek Parties continuously and persistently violated the noncompete restriction. Further, since August 26, 2020, when Surv-Tek filed the Motion to Enjoin Competition in the State Court Action, Surv-Tek has acted diligently to enforce its rights under the Non-Compete Agreement. The state court entered the State Court Order enjoining S-Tek and the S-Tek Parties from competing with Surv-Tek or the Surv-Tek Parties on October 21, 2020.[57] The state court entered an order to show cause why S-Tek and its principals should not be held in contempt for violating the State Court Order, but S-Tek filed its bankruptcy case on December 2, 2020, the day before the scheduled show cause hearing. This Court then determined that the automatic stay allowed S-Tek, and its principals Randy Asselin and Christopher Castillo, to the extent they were operating S-Tek, to continue to operate S-Tek regardless of their noncompete obligations and notwithstanding the State Court Order.[58]

Surv-Tek and the Surv-Tek Parties were prevented by the bankruptcy stay and this Court's order from enforcing their rights under the Non-Compete Agreement from December 2, 2020 forward, even though they had previously sought and obtained injunctive relief in the State Court Action. Surv-Tek and the Surv-Tek Parties were held at bay from enforcing the Non-Compete Agreement, while S-Tek continued to operate, so that S-Tek and the S-Tek Parties could have a full and fair opportunity to litigate their claims against Surv-Tek and their defenses against Surv-Tek's claims. If equitable tolling is not applied, Surv-Tek and the Surv-Tek Parties may be completely stripped of the benefit of their bargain under the Non-Compete Agreement even though they timely initiated and diligently prosecuted their claim to enforce their rights under the Non-Compete Agreement.

---

[57] *See* Doc. 13-127.
[58] *See* Doc. 17.

In addition, other equities favor equitable tolling. The noncompete obligations arose as a part of a negotiated commercial transaction between sophisticated parties represented by counsel in connection with the sale of Surv-Tek's business to S-Tek, and the noncompete obligations were reciprocal. The noncompete obligations flipped if S-Tek defaulted in its obligations to Surv-Tek and the default was not timely cured. Randy Asselin and Christopher Castillo, who are bound personally by the noncompete restriction, own the equity interests in and are the members of S-Tek. Apart from the $250,000 down payment, neither S-Tek nor the S-Tek Parties as guarantors have paid any part of the $1,800,000 purchase price for the business. On the other hand, the equities favor not enforcing S-Tek and the S-Tek Parties' Non-Compete Obligations if Surv-Tek would not operate a surveying business in competition with S-Tek and the S-Tek Parties. Enforcing the noncompete obligation in that circumstance could hurt S-Tek and the S-Tek Parties without providing any benefit to Surv-Tek or the Surv-Tek Parties.

*The Applicable Remaining Term of the Noncompete Period*

The remaining question for the Court to determine, if it applies equitable tolling, is the length of the equitable tolling period. The Court, as "a court sitting in equity 'may devise a remedy that extends or exceeds the terms of a prior agreement between the parties . . . to make the injured parties whole.'" *Ocean Beauty Seafoods, LLC v. Pacific Seafood Group*, 648 Fed. App'x 709, 712 (9th Cir. 2016) (quoting *Levitt Corp. v. Levitt*, 593 F.2d 463, 469 (2d Cir. 1979)).

The Non-Compete Agreement provides that S-Tek and the S-Tek Parties' obligation not to compete is triggered upon a "Default" or "Event of Default" that goes uncured for a period of 10 days after notice of the default is given.[59] Mr. Asselin contends that noncompete period under

---

[59] *See* Non-Compete Agreement, ¶ 3.

-19-

S-Tek and the S-Tek Parties' Non-Compete Obligation began to run on October 12, 2019, ten

days after the October 2019 Notice of Default. Mr. Asselin reasons further that S-Tek and the S-

Tek Parties' Non-Compete Obligations lapsed by their own terms as of October 12, 2022, three

years after the end of the cure period under the October 2019 Notice of Default.

However, the Court previously found that "S-Tek defaulted under the Note and did not

cure the default within 10 days after notice of default was given on March 23, 2020 (or

thereafter)."[60] The Court's prior fact findings made after the trial on the merits resulting in entry

of a final judgment have preclusive effect and are binding with respect to the Motion for

Declaratory Judgment.[61] Thus, the Court finds that the noncompete period imposed under S-Tek

and the S-Tek Parties' Non-Compete Obligations began to run on April 2, 2020, ten days after

the March 23, 2020 notice of default went uncured.[62] Based on the Court's prior finding of S-

Tek's uncured default, without tolling, the three-year noncompete period would have expired on

April 2, 2023.

As noted above, despite Surv-Tek's diligent efforts to enforce its rights under the Non-

Compete Agreement, S-Tek and the S-Tek Parties continued to operate S-Tek (i) after S-Tek's

---

[60] Memorandum Opinion – Doc. 132, p. 35 and p. 115.
[61] "Under law of the case doctrine, 'a court should not reopen issues decided in earlier stages of the same litigation.'" *Johnson v. Champion*, 288 F.3d 1215, 1226 (10th Cir. 2002) (quoting *Agostini v. Felton,* 521 U.S. 203, 236 (1997)). The law of the case doctrine can "appl[y] to 'subsequent rulings by the same judge in the same case.'" *LNV Corp. v. Solus Senior High Income Fund LP (In re La Paloma Generating Co.)*, No. 16-12700 (JTD), 2020 WL 224569, at *3 (Bankr. D. Del. Jan. 13, 2020) (quoting *In re Radnor Holdings Corp.*, 564 B.R. 467, 482 (Bankr. D. Del. 2017)). The Tenth Circuit has declined to "address under what circumstances findings of fact become law of the case." *United States v. Monsisvais*, 946 F.2d 114, 115 n.2 (10th Cir. 1991). Under the circumstances of this adversary proceeding, the Court concludes that it is appropriate to apply law of the case to the findings this Court made following a trial on the merits, resulting in the entry of a final judgment. Consequently, it is appropriate to bind the parties to this litigation to the Court's prior findings of fact.
[62] The October 2019 Default Notice was not offered or admitted in evidence at the trial in this adversary proceeding and therefore was not considered by the Court in making its findings.

-20-

uncured default on April 2, 2020; (ii) after August 26, 2020 when Surv-Tek filed its Motion to Enjoin Competition pursuant to the Non-Compete Agreement; (iii) after October 21, 2020 when the state court issued its order enjoining S-Tek, Randy Asselin, and Christopher Castillo from competing with Surv-Tek; and (iv) during the pendency of the S-Tek's chapter 11 case while S-Tek was protected from enforcement of the noncompete restriction by the automatic bankruptcy stay. S-Tek and the S-Tek Parties should not be able to take advantage of the running of the noncompete period after August 26, 2020 while the Motion to Enjoin Competition was being litigated and S-Tek was protected by the automatic bankruptcy stay from enforcement of the noncompete restriction if S-Tek was operating in competition with Surv-Tek in violation of the Non-Compete Agreement.

*Additional evidence is needed*

Additional evidence is needed regarding Surv-Tek and the Surv-Tek Parties' business operations, including when Surv-Tek resumed surveying in New Mexico after April 2, 2020 and the duration and nature of those operations. If Surv-Tek has not been conducting a survey business in New Mexico after August 26, 2020 or does not intend to continue its New Mexico surveying business, the Court may conclude that equitable tolling should not be applied either because S-Tek has not been operating in violation of its noncompete obligations or because it will not benefit Surv-Tek or the Surv-Tek Parties.

CONCLUSION

Based on the foregoing, the Court will schedule an evidentiary hearing. The Court will enter a declaratory judgment following the hearing.

ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:   April 13, 2023

COPY TO:

Randy P. Asselin
531 Pinon Creek Road SE
Albuquerque, NM 87123

Christopher B. Castillo
9812 Davenport Street NW
Albuquerque, NM 87114

Christopher M. Gatton
Attorney for Surv-Tek and the Surv-Tek Parties
Giddens & Gatton Law, P.C.
10400 Academy NE, Suite 350
Albuquerque, NM 87111